WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Mary Louise Yarberough,

           Plaintiff,

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

           Defendant.

No. CV-14-00870-PHX-ESW

**ORDER**

      Pending before the Court is Plaintiff Mary Louise Yarberough's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her claim for disability insurance benefits. Plaintiff filed her Title II Social Security Disability Insurance ("SSDI") application on March 15, 2008. Plaintiff alleges disability beginning February 24, 2004.

      This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.[1] (Doc. 9). After reviewing the Administrative Record ("A.R."), Plaintiff's

---

[1] This case was reassigned to Hon. Eileen S. Willett on November 14, 2014.

Opening Brief (Doc. 13), Defendant's Response Brief (Doc. 14), and Plaintiff's Reply (Doc. 15), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

## I. LEGAL STANDARDS

### A. Disability Analysis: Five-Step Evaluation

The Social Security Act provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). To be eligible for benefits, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. § 404.1520(a). The claimant has the burden of proof regarding the first four steps:[2]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.
>
> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges

---

[2] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

>are so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.
>
>**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. § 404.1520(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[3]

>**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. § 404.1520(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id*.

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and

---

[3] *Parra*, 481 F.3d at 746.

detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir.1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews*, 53 F.3d at 1039.

The Court must also consider the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  Plaintiff's Appeal

### A.  Procedural Background

Plaintiff, who was born in 1953, is high school educated and has experience working as a truck driver. (A.R. 279, 283, 288). Plaintiff alleges that on February 24, 2004, she became unable to work due to the following six impairments: (i) bulging disc; (ii) degenerative disc disease; (iii) lumbar spine impairment; (iv) bladder impairment; (v) depression; and (vi) torn cartilage in her left shoulder. (A.R. 282).

Plaintiff filed her initial SSDI benefit application on March 15, 2008. (A.R. 262-63). Social Security denied the application on May 28, 2008. (A.R. 156). On January 15, 2009, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's application. (A.R. 160). Thereafter, Plaintiff requested a hearing before an ALJ. (A.R. 163). The ALJ held a hearing on February 17, 2010. (A.R. 65). A

vocational expert ("VE") did not testify at the hearing. Instead, the ALJ submitted interrogatories to the VE. In her May 26, 2010 decision, the ALJ determined that Plaintiff is not disabled. (A.R. 131-49). Upon Plaintiff's request for review, the Appeals Council found that the ALJ improperly failed to allow Plaintiff the opportunity to cross-examine the VE. The Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (A.R. 151).

The ALJ held another hearing on March 12, 2012. (A.R. 94). The VE was present at the hearing, and was cross-examined by Plaintiff's attorney. (A.R. 124). In her December 17, 2013 decision, the ALJ again found that Plaintiff was not disabled. (A.R. 32). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-6). On April 24, 2014, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

### B. The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 24, 2004 through the date last insured of December 31, 2009. (A.R. 22). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following three impairments: (i) "status post left shoulder surgeries"; (ii) back disorder; and (iii) shoulder pain. (A.R. 22). The ALJ's determination at this step is undisputed.

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 of the Social Security regulations. (A.R. 27). This finding is undisputed.

### 4. Step Four: Capacity to Perform Past Relevant Work

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:
> [Plaintiff can] occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; she is precluded from prolonged sitting; push and/or pull is limited in upper and lower extremities, the claimant should avoid forceful pushing and pulling; she can occasionally climb ramps and stairs; should never climb ladders, ropes or scaffolds; she cannot climb off and on trucks; she can frequently balance, stoop and kneel; she is precluded from repeated bending and stooping; can occasionally crouch and crawl; she can occasionally handle and finger with the left upper extremity; she is unable to work above shoulder level with the left arm; the claimant has unlimited reaching, handling and fingering with the right upper extremity; she is right hand dominant; feeling is unlimited in both arms; she should avoid even moderate exposure to hazards such as machinery and heights.

(A.R. 27-28).

Based on the RFC, the ALJ determined that Plaintiff is unable to perform her past relevant work as a truck driver. (A.R. 30). In her appeal, Plaintiff challenges the ALJ's RFC assessment by arguing that the ALJ improperly weighed the medical source opinions.

### 5. Step Five: Capacity to Perform Other Work

At the March 2012 hearing, the VE testified that given Plaintiff's past relevant work, she has skills that would transfer to work as a security guard or dispatcher. (A.R. 120-22). After considering the RFC posed by the ALJ, the VE testified that Plaintiff is also capable of performing the positions of security guard or dispatcher. (A.R. 122-24).

Plaintiff challenges the ALJ's determination at step five by contending that the VE recanted her testimony that Plaintiff would be able to work as a dispatcher. Plaintiff

further argues that the ALJ failed to meet her burden at step five by proving that Plaintiff is able to perform work that exists in significant numbers in the national economy. (Doc. 13 at 8-9).

### C. Plaintiff's Challenge to the ALJ's Analysis at Step Four: The ALJ Properly Weighed the Medical Source Opinions

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to a treating physician's opinion than to the opinion of a non-treating physician. *Id*. An ALJ cannot reject a treating physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence, such as finding that a treating physician's opinion is inconsistent with and not supported by the record as a whole. 20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

#### 1. Dr. Bryan Matanky's Records

It is well-settled that an ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's duty to resolve conflicts and ambiguity in the evidence does not mean that the ALJ must discuss *all* evidence presented to him or her. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the Commissioner need not discuss all evidence presented). Rather, an ALJ must explain why "significant probative evidence has been *rejected*." *Id*. at 1395 (emphasis

added); *see also Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ is not required to discuss evidence that is neither significant nor probative).

An ALJ's interpretation of a physician's opinion does not necessarily constitute a rejection of that opinion. For example, in *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995), a claimant's treating physician opined that the claimant could perform a "sedentary type job." The ALJ concluded that the physician did not use the term to mean "sedentary work" as defined by Social Security regulations. *Id*. The ALJ assessed that the claimant could perform file clerk work, which Social Security regulations define as "light work." *Id*. at 751. On appeal, the claimant attached a letter from the physician, which stated that the physician intended to use the term "sedentary" within the regulations' technical meaning. *Id*. The Ninth Circuit Court of Appeals agreed with the ALJ's interpretation of the physician's opinion as there "was no evidence at all before the ALJ" to indicate that the physician meant that the claimant could only perform "sedentary work" as defined by Social Security regulations. *Id*. at 750. The Court also refused to remand the case for consideration of the physician's newly-submitted letter as the claimant did not establish good cause for failing to submit the evidence during the administrative proceedings. *Id*. at 751. Finding that substantial evidence supported the ALJ's conclusions, the Court affirmed the ALJ's decision. *Id*.

Here, the ALJ's decision discussed the treatment records of Plaintiff's orthopedic surgeon, Dr. Bryan Matanky. (A.R. 23-24; 28-29). The ALJ noted that in November 2004, Dr. Matanky performed surgery on Plaintiff's left shoulder and opined that Plaintiff was temporarily disabled in February 2005. (A.R. 23). The ALJ also noted that in March 2005, Dr. Matanky stated that Plaintiff was to return to modified work duties that involved "sedentary-type work" with minimal use of the left arm and did not include truck driving. (*Id*.). The ALJ acknowledged that when Plaintiff's pain returned in June 2005, Dr. Matanky placed Plaintiff on a no work status. (*Id*.). Finally, the ALJ discussed Dr. Matanky's most recent treatment record, dated April 2006, in which Dr. Matanky noted that the labral tear in Plaintiff's left shoulder appeared to be in proper position and

was likely healed. (A.R. 24). The April 2006 treatment record also noted Dr. Matanky's recommendation that Plaintiff engage in "generally limited activities." (A.R. 367).

Plaintiff argues that the ALJ "neither accepts or rejects the sedentary opinion of Dr. Matanky and has erred in law by the implicit rejection." (Doc. 13 at 7). Plaintiff's argument, however, rests on the erroneous assumption that the ALJ did in fact reject Dr. Matanky's opinion. Dr. Matanky did not define his use of the phrases "sedentary-type work" and "generally limited activities." Dr. Matanky also did not opine that Plaintiff's condition would last for a continuous 12 month period or that Plaintiff was unable to work. 42 U.S.C. § 423(d)(1)(A) (defining "disability" as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months"); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

Plaintiff has the burden of proof at step four of the disability analysis. That is, Plaintiff is ultimately responsible for providing the evidence to be used in making the RFC finding. *Andrews*, 53 F.3d at 1040 (a claimant bears the burden of proving entitlement to disability benefits); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (claimant carries burden to present "complete and detailed objective medical reports" of his or her condition from licensed medical professionals). Plaintiff could have requested that Dr. Matanky answer interrogatories or be subpoenaed at the administrative hearings to clarify his opinions, but Plaintiff did not.[4] Thus, similar to *Orteza*, there was no

---

[4] Any argument that the case should be remanded for a determination of Dr. Matanky's intended meaning of "sedentary-type work" or "generally limited activities" has been waived. *Meanel*, 172 F.3d at 1115 (at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal); *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (deeming argument not made in disability claimant's Opening Brief waived). The ALJ, rather than the Court, was in the optimal position to resolve any ambiguities in statements made in Dr. Matanky's report. *See Meanel*, 172 F.3d at 1115. The Court does not find that manifest injustice would occur in deeming the argument waived. *Id.* (failure to comply with waiver rule is only excused when necessary to avoid

evidence at all before the ALJ as to Dr. Matanky's intended definitions of "sedentary-type work" and "generally limited activities."

Dr. Matanky's records note that Plaintiff has some limitations pertaining to the use of her left shoulder. The ALJ's RFC assessment states that Plaintiff is "unable to work above shoulder level with the left arm." (A.R. 27). Plaintiff has failed to show how Dr. Matanky's medical statements are inconsistent with the ALJ's assessment of Plaintiff's RFC. As such, the Court finds that the ALJ did not improperly ignore or reject Dr. Matanky's treatment records. The Court further finds that the ALJ's interpretation of Dr. Matanky's records is reasonable and supported by substantial evidence.

### 2. Dr. Patrick Flyte's Records

In her December 2013 decision, the ALJ recounted records from Plaintiff's primary care physician, Dr. Patrick Flyte. (A.R. 25-26; 28-30). Since Dr. Flyte is a treating medical source, his opinion cannot be rejected in favor of a contradicting opinion without specific and legitimate reasons that are supported by substantial evidence in the record. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ discussed that in August 2004, Dr. Flyte stated that "pt OK to go back to work" after Plaintiff obtained a MRI of her left shoulder. (A.R. 23; 496). Yet as noted by the ALJ, Dr. Flyte opined in 2010 that Plaintiff has been disabled and unable to perform any full-time or part-time work since February 24, 2004. (A.R. 29-30; 739). Dr. Flyte also opined that Plaintiff is expected to be disabled for the rest of Plaintiff's life. (A.R. 739).

The ALJ rejected Dr. Flyte's opinion. The ALJ instead gave significant weight to the findings of the State agency medical consultant, who found Plaintiff capable of a range of light work with manipulative limitations as of May 2008. (A.R. 30). Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Flyte's opinion. (Doc. 13 at 8).

---

manifest injustice).

In rejecting Dr. Flyte's opinion, the ALJ explained that Dr. Flyte's "inconsistent statements undermine the credibility of his opinion." (A.R. 28). This is a valid reason for rejecting Dr. Flyte's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (a conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (upholding ALJ's decision to reject examining psychologist's functional assessment that conflicted with his own written report and test results).

The ALJ also rejected Dr. Flyte's opinion on the basis that it is "too restrictive in light of his treatment notes and lack of objective evidence to support his functional assessment, as well as [Plaintiff's] history of conservative treatment and the overall record." (A.R. 30). This is also a specific and legitimate reason for rejecting the opinion. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ's reasons for rejecting Dr. Flyte's opinion are supported by substantial evidence. Dr. Flyte's statement in August 2004 that Plaintiff could go back to work directly contradicts his statement in 2010 that Plaintiff has been disabled since February 2004. Dr. Flyte's 2010 opinion that Plaintiff has been disabled since 2004 and is expected to remain disabled is also inconsistent with other records. For example, a January 13, 2012 medical record indicates that Plaintiff had "normal range of motion of all major muscle groups," with no limb or joint pain with range of motion.[5] (A.R. 753). Other treatment records from Dr. Flyte state that Plaintiff was positive for chronic back pain, but the records do not describe the severity of pain or how the pain limits Plaintiff's

---

[5] Although this record is dated after Plaintiff's date last insured (December 31, 2009), "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Taylor v. Commissioner of Social Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (internal quotation marks and citation omitted).

- 11 -

ability to work. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981). In addition, many of Dr. Flyte's treatment records indicate that Plaintiff was negative for arthragias, joint stiffness, limb pain, or myalgias. (*e.g.*, A.R. 759, 763, 767, 771, 779). As the ALJ's reasons for rejecting Dr. Flyte's opinion are specific, legitimate, and are supported by substantial evidence, the Court finds that the ALJ did not improperly reject Dr. Flyte's opinion.

### 3. Dr. Stephen Wertheimer's Assessment

The ALJ gave Dr. Stephen Wertheimer's March 2007 assessment weight as being generally consistent with the evidence available at that time. (A.R. 30). In her Opening Brief, Plaintiff states that Dr. Wertheimer "precluded [Plaintiff] from [Plaintiff's] past work and indicated no heavy lifting. Unfortunately, the doctor did not define heavy nor did the doctor discuss 'on feet' capacity at all." (Doc. 13 at 5-6). To the extent that Plaintiff cites Dr. Wertheimer's opinion to support her challenge of the ALJ's decision, Plaintiff fails to show that the ALJ's RFC assessment is inconsistent with Dr. Wertheimer's opinions. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address one of the ALJ's findings as the claimant's briefing failed to argue the issue with specificity) (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir.2003) (noting that we "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief")). Dr. Wertheimer did not preclude the level of light exertional work as set forth in the RFC. Thus, the ALJ did not improperly weigh Dr. Wertheimer's opinion.

### 4. Dr. Brian Page's Records

The ALJ's decision discusses records from Plaintiff's pain management doctor, Dr. Brian Page. (A.R. 26; 29). Plaintiff states in her Opening Brief that "Dr. Page is seeing chronic pain at a moderately severe to severe level," but Plaintiff does not further elaborate. (Doc. 13 at 8). To the extent that Plaintiff cites Dr. Page's records to support her challenge of the ALJ's decision, Plaintiff fails to show that the ALJ's RFC

assessment is inconsistent with Dr. Page's records. *See Carmickle*, 533 F.3d at 1161 n.2. As noted by the ALJ, Dr. Page reported in May 2009 that Plaintiff was stable. (A.R. 26, 677). On June 25, 2008, Dr. Page stated that Plaintiff was able to sit, stand, and walk without difficulty. (A.R. 673). Although Dr. Page's records contain Plaintiff's self-reported statements that Plaintiff is in pain, Dr. Page did not opine that the pain is disabling. *See Matthews*, 10 F.3d at 680; *Rhodes*, 660 F.2d at 723. The Court therefore finds that the ALJ did not improperly weigh Dr. Page's records.

**D. Plaintiff's Challenge to the ALJ's Decision at Step Five: The Commissioner Met the Burden of Proof of Showing that Plaintiff is Capable of Performing Other Work in the National Economy Existing in Significant Numbers**

### 1. Plaintiff's Contention that the VE Recanted her Testimony

At the March 2012 hearing, the VE testified that Plaintiff could perform the work of dispatcher or security guard. (A.R. 121-24). Plaintiff argues that later during the hearing, the VE recanted her testimony that Plaintiff is able to work as a dispatcher. Plaintiff states that "a closer look at the VE testimony under cross-examination finds the [VE] to recant her testimony, advising that the claimant's listed skills 'would not be as much of a skill as being able to use dispatch equipment.'" (Doc. 13 at 5).

Plaintiff's argument mischaracterizes the VE's testimony. The VE merely stated that the use of a cell phone is "[p]robably more a basic skill, and perhaps that would not be as much of a skill as being able to use dispatch equipment and being able to coordinate with the dispatch, and understanding how to locate addresses and locations." (A.R. 127). The VE did not testify that Plaintiff lacked the ability to use a cell phone. In fact, the VE testified that typically truck drivers "use cell phones, two-way radio dispatch equipment." (A.R. 121). At the hearing, Plaintiff did not challenge the VE's assumption that Plaintiff used a cell phone and two-way radio dispatch equipment while employed as a truck driver. Plaintiff also did not testify that she is unable to use a cell phone. To the contrary, Plaintiff testified that she uses her cell phone to set reminders to take her medication. (A.R. 112).

The Court concludes that the ALJ reasonably found that the VE did not recant her testimony that Plaintiff is able to work as a dispatcher. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("When the evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision.").

### 2. The ALJ's Determination that Plaintiff Could Work as a Security Officer

An ALJ may rely on a VE's testimony that is based on a hypothetical that "contain[s] all of the limitations the ALJ found credible and supported by substantial evidence." *Ghanim*, 763 F.3d at 1166 (alteration in original); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

At the March 2012 hearing, the ALJ recited to the VE the ALJ's assessment of Plaintiff's RFC. Based upon Plaintiff's transferable skills and assessed RFC, the VE testified that Plaintiff could perform the work of a security guard. (A.R. 124). The *Dictionary of Occupational Titles* ("DOT") states that one of the duties of the position of security guard is "Warns violators of rule infractions, such as loitering, smoking, or carrying forbidden articles, and apprehends or expels miscreants." DOT § 372.667-034.

Plaintiff challenges the VE's testimony that Plaintiff is able to perform the position of security officer. Plaintiff argues that "the job of a security guard, which the DOT advises is responsible for apprehending or expelling miscreants, may not be able to be performed with the ability to only reach with one upper extremity more than occasionally." (Doc. 13 at 6). Plaintiff also argues that "the need to be able to 'apprehend and expel miscreants' poses a difficult problem for a person who cannot forcefully push or pull with the left upper extremity . . . as indicated by Dr. Wertheimer to whom the ALJ gave some weight . . . . Although this restriction was posed to the VE at the hearing, the issue of the DOT advising the need to expel miscreants was not addressed by counsel at the hearing and obviously missed by the VE during her addressing the security guard position." (*Id.*).

- 14 -

Here, the ALJ's hypothetical to the VE contained all the limitations in the ALJ's final assessed RFC.[6] As the ALJ did not commit harmful legal error in assessing the RFC and the RFC is supported by substantial evidence, the ALJ's reliance on the VE's testimony was proper. *Bayliss*, 427 F.3d at 1217. The VE's testimony provides substantial evidence of the existence of a significant number of jobs that Plaintiff can perform. *See Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988); *Johnson v. Shalala,* 60 F.3d 1428, 1435–36 (9th Cir. 1995) (an ALJ properly may rely on VE to identify jobs claimant can perform). Accordingly, the Court does not find that the ALJ erred in finding that Plaintiff can perform the position of security guard.

### 3.  The Commissioner's Burden of Proof

At the fifth step of the disability analysis, the burden rests on the Commissioner to show that the claimant can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). In determining whether the claimant retains the ability to perform other work, the ALJ may refer to Social Security's Medical-Vocational Guidelines (the "Grids") in certain cases. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00; *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576-77 (9th Cir. 1988). The Grids are divided into three job categories: (i) sedentary work, (ii) light work, and (iii) medium work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00. The Grids calculate whether or not the claimant is disabled based on the claimant's exertional physical ability, age, education, and work experience. As such, the Grids are intended to streamline the administrative process and encourage uniform

---

[6] Plaintiff argues that when "the ALJ gave the VE her proposed functional capacity she failed to include occasional reaching with the left upper extremity," which is a restriction assessed by the state agency physician. (Doc. 13 at 6). The ALJ's RFC assessment did not include the phrase "occasional reaching with the left upper extremity. The RFC assessment instead provides that Plaintiff is "unable to work above shoulder level with the left arm." (A.R. 27). The Court finds that this statement encompasses the "occasional reaching with the left upper extremity" restriction noted by the State agency physician.

treatment of claims. *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983) (discussing the creation and purpose of the Grids).

However, an ALJ should rely on the Grids "only when the [G]rids accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir.1985); *see also Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir.1999) (noting that the Grids "should be applied only where a claimant's functional limitations fall into a standardized pattern 'accurately and completely' described by the [G]rids" and that a VE should be consulted where limitations "significantly limit the range of work" a person can perform) (citation omitted). Use of the Grids is inappropriate where a claimant has non-exertional limitations that restrict the claimant's ability to perform the full range of work within a job category. *Burkhart*, 856 F.2d at 1340-41. Examples of non-exertional limitations include difficulty in performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. § 404.1569a(c)(vi); *Tackett*, 180 F.3d at 1102.

In cases where a claimant is able to perform the <u>full range</u> of light work, the Grid for light work applies. *Tackett*, 180 F.3d at 1101 (for use of the Grids to be justified, "a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work") (emphasis in original). The Ninth Circuit in *Lounsburry v. Barnart*, 464 F.3d 944 (9th Cir. 2006) held that in cases where the Grid for light work applies, there must be more than one type of job available to a claimant in order for the Commissioner to meet the burden at step five of showing there are a significant number of jobs in the national economy that a claimant can perform.[7] In cases

---

[7] Within the Grids' rules applicable to light work is Rule 202.00(c), which states that "for individuals of advanced age who can no longer perform vocationally relevant past work and who have only skills that are not readily transferable to a **significant range** of semi-skilled or skilled work that is within the individual's functional capacity the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled." 20 C.F.R. Part 404, Subpart P, App. 2 § 202.00(c) (emphasis added). In *Lounsburry*, the Ninth Circuit interpreted "significant range" as meaning more than one job. *Lounsburry*, 464 F.3d at 950 ("One occupation does not constitute a significant range of work [under Rule 202.00(c)]").

where the Grid for light work does not apply, however, the Commissioner can meet the burden at step five by showing that a claimant is able to perform one type of job that exists in significant numbers. *Tommasetti*, 533 F.3d at 1044 (finding that although ALJ erred at step four in finding that claimant could perform past work, the error was harmless because the ALJ properly concluded as an alternative at step five that the claimant could perform work as a semiconductor assembler); *Meanel*, 172 F.3d at 1115 (affirming ALJ's decision after concluding that the ALJ properly determined that the claimant could perform the position of surveillance systems monitoring, which existed in significant numbers).

Here, the ALJ found that Plaintiff is unable to perform the full range of light work. (A.R. 32). Plaintiff does not argue that she can perform the full range of light work. Because claimant is unable to perform the full range of light work, the Grid for light work does not apply. Thus, under *Tommasetti* and *Meanel*, the Commissioner may meet the burden at step five of the disability analysis by showing that Plaintiff is capable of performing at least one job. The ALJ determined that Plaintiff can perform two types of jobs: dispatcher and security guard. As discussed above, the ALJ's finding is free of harmful error and is supported by substantial evidence. The Court therefore finds that the Commissioner satisfied the burden at step five in showing that Plaintiff can perform other work in the national economy that exists in significant numbers.

### III. CONCLUSION

The Court has reviewed the record and finds the ALJ's decision is supported by substantial evidence and is free from reversible error. Based on the foregoing discussion, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security. The Clerk of Court shall enter judgment accordingly.

Dated this 21st day of May, 2015.

_____
Eileen S. Willett
United States Magistrate Judge